IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Reco A. Hill, #292722, | ) | Civil Action No.:2:11-02978-MGL-BHH |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Warden Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 12; see also Dkt. No. 13.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on or about October 27, 2011. (See Dkt. No. 1-3.) On January 30, 2012, the Respondent moved for summary judgment. (Dkt. No. 12; see also Dkt. No. 13.) By order filed January 31, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 14.) Petitioner filed his Response in Opposition on or about March 1, 2012. (Dkt. No. 16.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at McCormick Correctional Institution ("MCI") of the South Carolina Department of Corrections ("SCDC"). Petitioner was indicted by the Anderson County Grand Jury for murder in August of 2002. (See Dkt. No. 13-1 at 110-11 of 111.) Public Defender Robert A. Gamble, Esquire, was appointed to represent Petitioner. On December 2, 2002, the solicitor noticed Petitioner and his attorney Mr. Gamble of the

State's intention to seek the death penalty. (See Dkt. No. 13-2; Dkt. No. 13-3.) On December 12, 2002, the Supreme Court of South Carolina issued an Order vesting exclusive jurisdiction "to hear and dispose of" the case with the Honorable J.C. Nicholson, Jr. (See Dkt. No. 13-4.) On January 16, 2003, Judge Nicholson designated Attorney Robert A. Gamble as lead attorney and Attorney Rame L. Campbell as co-counsel. (See Dkt. No. 13-5.)

On April 28, 2003, Petitioner pled guilty to the charge of murder before the Honorable J.C. Nicholson, Jr. (See Dkt. No. 13-1 at 3-27 of 111.) Rodney Richey, Esquire, appeared at that hearing on behalf of Petitioner, in addition to Mr. Gamble and Mr. Campbell. (See id.) After accepting the plea, Judge Nicholson sentenced Petitioner to life without parole. (Id. at 26 of 111.)

Petitioner did not file a direct appeal, but he did file an application for post-conviction relief ("PCR") on or about August 26, 2003. (Dkt. No. 13-1 at 28-42 of 111.) In his PCR application, Petitioner stated,

> (a) I would aver that my trial counsel was inept, and constitutionally ineffective, thus violating my rights under the S.C. Const. Art. I §§ 3+4, and under Art. IV § 2, and the 6th and 14th Amendments to the United States Constitution.
>
> (b) I would aver that my plea of guilty was "not" freely, knowingly, intelligently, and voluntarily given to the court, thus violating my rights under the S.C. Const. Art. I § 3, and under the 14th Amendment to the United States Const.
>
> (c) I would aver that the circuit court lacked subject matter jurisdiction to entertain my case and sentence thus violating my rights under the S.C. Const. Art. I § 3, and under Art. IV § 2, and the 14th Amendment to the United States Constitution.
>
> (d) I would aver that the circuit court lacked jurisdiction to entertain my case, and sentence me, thus violating my rights under the S.C. Const. Art. I § 3, and under Art. IV § 2, and the 14th Amendment to the U.S. Const.

(Dkt. No. 13-1 at 35 of 111.) Hugh Welborn, Esquire, was appointed to represent Petitioner. (See Dkt. No. 13-1 at 50 of 111.)

On November 3, 2005, Judge Williams heard Mr. Welborn's second motion to be relieved as counsel. (Id. at 48-53.) Mr. Welborn indicated that he asked to be relieved during the last term of court because Petitioner "refused to cooperate" with him, but that the Court denied the motion and "admonished [Petitioner] to cooperate" with Mr. Welborn. (Id. at 50.) Judge Williams denied Mr. Welborn's second motion to be relieved as counsel, stating, "I have no reason to think [Petitioner] could cooperate with anybody more than he's going to cooperate with you." (Id.)

On December 6, 2005, an evidentiary hearing was held before the Honorable James C. Williams, Jr. (Dkt. No. 13-1 at 54-103 of 111.) Petitioner was present and represented by Mr. Welborn. Judge Williams issued a short form order denying the petition that same day; this order indicated that the State was to prepare a written order. (See Dkt. No. 13-8.) In a written order dated January 18, 2006, Judge Williams denied the application for post-conviction relief and dismissed the petition. (Id. at 104-09 of 111.)

Petitioner, though his attorney Wanda Carter of the South Carolina Commission on Indigent Defense, filed a Johnson Petition for Writ of Certiorari on November 23, 2009. (See Dkt. No. 13-12.)[1] Through counsel, the Petitioner argued that "[t]rial counsel erred in allowing [him] to plead guilty when his actual innocence was an issue in the case." (Dkt. No. 13-12 at 5 of 8.) Ms. Carter also filed a petition to be relieved as counsel. (Id. at 7 of 8.) Petitioner also filed a pro se brief on or about January 20, 2010. (See Dkt. No. 13-14.) The Supreme Court of South Carolina entered an order denying the petition on February 16, 2011. (See Dkt. No. 13-16.) The matter was remitted to the lower court on March 4, 2011. (Dkt. No. 13-17.)

Petitioner then filed the instant habeas petition, wherein he raises the following four grounds for relief:

---

[1] See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

3

1. ineffective assistance of counsel,

2. involuntary guilty plea,

3. lack of subject matter jurisdiction, and

4. invalid indictment.

(See generally Dkt. No. 1; Dkt. No. 1-1.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410.

## DISCUSSION

Respondent moved for summary judgment on all of Petitioner's grounds for relief. (See Dkt. No. 12; Dkt. No. 13.) The undersigned will address Petitioner's grounds in turn.

**A.     Ineffective Assistance of Counsel**

In his Petition, Hill claims that his counsel was ineffective in the following ways:

(1) failing to file an appeal,

(2) failing to conduct a "thorough investigation,"

(3) failing to "consult with the defendant about any potential defenses or strategy,"

(4) failing to attempt "to mitigate with the prosecutor before the prosecutor decided on any time," and

(5) failing to give the defendant "his entire case file."

(Dkt. No. 1-1 at 2-9 of 15.)

Strickland v. Washington, 466 U.S. 668 (1984), states that a meritorious ineffective assistance of counsel claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Id. at 687–96.  A court's evaluation of counsel's performance under this standard must be

"highly deferential," so as to not "second-guess" the performance. Id. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id.

The two-part test enunciated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hilll v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

### 1. Failure to Appeal

As noted above, Petitioner contends his counsel was constitutionally ineffective because counsel did not file an appeal. (See Dkt. No. 1-1 at 2-3 of 15.) Petitioner states that "prejudice is presumed when counsel failed to file a timely notice of appeal after there was a discussion by the defendant and counsel that defendant indeed wish[ed] to appeal his plea and sentence." (Id. at 2.) Petitioner points to his Exhibit A as evidence in support of this claim; he states that he "forwarded a letter to the South Carolina Office of Appellant [sic] defense approximately around 6-1-03 to see if his plea counsel appealed the sentence and

guilty plea only to receive a response that an appeal was never filed on (his) defendant's behalf." (<u>Id</u>. at 2-3.)

In his written order, the PCR judge noted Petitioner's testimony that he "asked his attorney to file an appeal and his attorney failed to do so." (Dkt. No. 13-1 at 106 of 111.) The PCR judge also noted Mr. Gamble's testimony that Petitioner did not request an appeal. (<u>Id</u>.) In rejecting his PCR application, the PCR judge stated,

> This Court does not find the testimony of Applicant to be credible. This Court does find Mr. Gamble's testimony credible. . . .
> . . .
> [T]his Court finds that Applicant failed to show that he requested an appeal and that Mr. Gamble failed to file one on his behalf.

(<u>Id</u>. at 107-08.)

Respondent seeks summary judgment on this ground because "Petitioner's testimony at the PCR evidentiary hearing, and Mr. Gamble's testimony, are clearly at odds," and the PCR judge "resolved the factual contest against Petitioner." (Dkt. No. 13 at 18 of 28.) Respondent is correct; the PCR judge discredited Petitioner's testimony that Petitioner asked Gamble to file an appeal and credited Gamble's testimony that Petitioner did not ask Gamble to file an appeal. (Dkt. No. 13-1 at 108.) These factual findings on credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also Wilson v. Ozmint</u>, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not done so. In his Petition, and in his Response in Opposition to the Motion for Summary Judgment, Petitioner points to a letter dated June 6, 2003, from the South Carolina Office of Appellate Defense. (<u>See</u> Dkt. No. 1-2 at 2 of 36; Dkt. No. 16-1 at 3 of 14.) That letter stated, *inter alia*, "We have no record of an appeal on your behalf in our office." (Dkt. No. 1-2 at 2 of 36.) In his Response in Opposition, Petitioner "ask[s] if he had no desire to appeal his conviction or consulted with his counsel about an

appeal then why write these people and ask about an appeal if he had no desire to a direct appeal." (Dkt. No. 16-1 at 3 of 14.) Petitioner also contends that he can show that he "indeed had a desire to appeal his conviction and sentence by demonstrating . . . how [he] did not want to plea[d]." (Id. at 1 of 14.)

Petitioner pled guilty and was sentenced on April 28, 2003. A letter dated June 6, 2003, long after the time for filing a Notice of Appeal had passed, does not constitute the "clear and convincing" evidence necessary to rebut the PCR judge's factual finding. See 28 U.S.C. § 2254(e)(1). Nor does the transcript of Petitioner's guilty plea hearing support Petitioner's claim that his attorney was ineffective for failing to file an appeal. At that hearing, when the plea judge asked whether Petitioner's attorneys answered all of his questions, Petitioner stated, "The majority." (Dkt. No. 13-1 at 10 of 111.) When the judge asked which questions the attorneys had not answered, Petitioner then responded that they had answered all of his questions to his satisfaction. (Id.) Petitioner indicated that he "fe[lt] like" he "should have seen" his attorneys more often, but when the judge asked how much more time he needed with his attorneys, Petitioner said, "I don't need to spend no more time." (Id. at 10-11.) When Petitioner stated that his attorneys had not discussed his case with him, the judge ordered a thirty minute recess. (Id. at 11-12.) Upon returning from the recess, the Petitioner indicated his attorneys had answered all of his questions, that he was satisfied with his attorneys, and that he did not have any complaints against his attorneys. (Id. at 12.) When the plea judge asked Gamble whether he had gone over the elements of murder with Petitioner, the following colloquy occurred:

> MR. GAMBLE: Yes, sir. . . . Anyway, I have no real problem with him understanding. He wants, or wanted me to develop a defense, which doesn't exist. That was the one sole want that he had. I couldn't find him one.
>
> THE COURT: What was that want as far as the defense that he wanted?

MR. GAMBLE: Accident.

THE COURT: Accident.

MR. GAMBLE: Yes, sir. And the problem with that, as I saw it, there was a hiding of the body after the death, and then telling three distinct separate stories after the death, which would probably abrogate the defense of accident in my opinion.

THE COURT: What about the injuries themselves?

MR. GAMBLE: The injuries themselves would have made the defense very difficult. I'll let the state go into that, but the injury types from the autopsy report would have put us away.

THE COURT: Did he appear to understand that[?]

MR. GAMBLE: Yes, sir. He didn't want to, but he appeared to understand what we were telling him collectively. And, finally, it became apparent there was no win as to the front portion of the case.

(Dkt. No. 13-1 at 13-14 of 111.)

Although Petitioner contends the plea hearing transcript reveals that he did not want to plead guilty, the undersigned concludes such a reluctance is not "clear and convincing" evidence sufficient to rebut the PCR judge's factual findings because the plea hearing transcript also reveals Petitioner's desire to plead guilty. After going over Petitioner's constitutional rights, the plea judge asked Petitioner how he wished to plead, and Petitioner's response was "guilty." (See Dkt. No. 13-1 at 16 of 111.) When the plea judge asked Petitioner whether he was guilty, Petitioner stated, "Yeah." (Id.) Even if one accepts Petitioner's argument that his reluctance to plead guilty is evidence that he wanted to appeal, the PCR judge's factual determination cannot be disturbed in a § 2254 petition without clear and convincing evidence. There was evidence in the record that Petitioner did not request an appeal. That factual finding is entitled to deference. Because Petitioner has not met the standard set forth in § 2254, the undersigned recommends granting summary

judgment to Respondent on the claim that counsel was ineffective for failure to file an appeal.[2] See Rodriguez v. Padula, No. 0:11-cv-01297-RBH, 2012 WL 384862, at *7-9 (D.S.C. Feb. 3, 2012) (dismissing the claim that counsel was ineffective for failing to file a direct appeal where the petitioner did not "demonstrate[] by clear and convincing evidence that the PCR court's factual determinations were incorrect" or that the PCR court "unreasonably misapplied clearly established federal law in rejecting his claim").

## 2. Remaining Ineffective Assistance of Counsel Claims

Petitioner also claims his counsel was ineffective because his counsel (a) failed to conduct a "thorough investigation"; (b) failed to "consult with the defendant about any potential defenses or strategy"; (c) failed to attempt "to mitigate with the prosecutor before the prosecutor decided on any time"; and (d) failed to give the Petitioner "his entire case file." (Dkt. No. 1-1 at 2-9 of 15.) In analyzing these claims, the PCR judge first noted the testimony at the PCR hearing. Petitioner testified that his attorneys "forced him to plead guilty" and "only met with him two (2) or three (3) times and did not properly investigate the charges against him." (Dkt. No. 13-1 at 105 of 111.) Petitioner further testified that "he asked his attorney for evidence the solicitor had turned over in discovery but that plea counsel failed to provide that evidence." (Id.) According to Petitioner, his counsel "did not prepare

---

[2]As Respondent notes, Petitioner did not claim that counsel was ineffective for failing to consult with him about an appeal. (See Dkt. No. 13 at 18 of 28.) The PCR judge made no findings or conclusions about whether counsel was ineffective for failing to consult with Petitioner about an appeal. (See generally Dkt. No. 13-1 at 104-09 of 111.) Accordingly, any such claim is procedurally barred in the instant action. See Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion; Miller v. Padula, C.A. No. 2:07-3149-PMD, 2008 WL 1826495, at *10 (D.S.C. Apr. 23, 2008) (concluding the petitioner's claim that counsel was ineffective for failing to challenge the lack of timely action on the arrest warrant was not properly exhausted because the claim was not raised during the PCR hearing, and "[a]n issue not ruled upon by the PCR judge is not preserved for review on appeal," and the petitioner's "attempt to raise the new issue in his post-trial motion was insufficient to preserve the issue for appeal").

for trial" and "failed to review the state's file and offer a defense of accident to the jury." (Id.) Petitioner also testified that he was "arrested without probable cause and was not read his Miranda rights," so plea counsel "should have tried to suppress the statements he made to police." (Id. at 106.)

The PCR judge noted that plea counsel testified "as to the investigation he made into the charges" against Petition, and stated that "he prepared as best he could but the facts against [Petitioner] were overwhelming." (Id.) According to Gamble, Petitioner "asked for copies of any exculpatory evidence in the discovery [Gamble] received from the state," but "there was no exculpatory evidence." (Id.) Gamble further testified that Petitioner "never requested his counsel to offer the jury the defense of accident." (Id.)

As noted above, in rejecting the PCR application, the PCR judge found Gamble's testimony credible and found Petitioner's testimony not credible. (Id. at 107.) The PCR judge's order states,

> Mr. Gamble did fully investigate Applicant's case and was prepared to go to trial. Applicant understood the charges against him, and the case the state had assembled and the rights he was giving up by pleading guilty. This Court finds that Applicant chose freely and voluntarily to plead guilty in an effort to receive a more lenient sentence.
>
> This Court further finds that the case against Applicant was overwhelming and that Applicant has not shown that plea counsel was deficient. Certainly Applicant has not shown that "but for" any alleged deficiency the outcome of his case would have been different. Plea counsel kept Applicant well informed. Mr. Gamble's strategy with regard to requesting assistance from Mr. Campbell and Mr. Richey was well within the reasonable professional norms of a criminal defense attorney in this state.
>
> This Court does not find that the indictment against Applicant was defective. Applicant has provided no support for his allegations that he was arrested improperly or that his indictments were returned in a racially discriminatory manner. He certainly has failed to show that his counsel was ineffective for failing to raise these issues.
>
> . . .
>
> As discussed above, Applicant has failed to carry his burden in this action. Therefore, this Court finds that the application must be denied and dismissed.

(Id. at 107-08.)

Respondent seeks summary judgment on these claims of ineffective assistance of counsel because "[i]n light of the record, the PCR judge reasonably determined Petitioner failed to show deficient performance and resulting prejudice–the necessary *Strickland/Hill* standard." (Dkt. No. 13 at 23 of 28.) The undersigned agrees with Respondent and recommends that summary judgment be granted to Respondent on the remaining ineffective assistance of counsel claims.

### a. Failure to Investigate or Provide Entire File

As noted above, Petitioner claims his counsel was ineffective for failing to investigate and failing to provide Petitioner with all of the discovery from the State. The PCR judge found that counsel "fully investigate[d]" Petitioner's case and was prepared to go to trial. (See Dkt. No. 13-1 at 107.) Petitioner has not rebutted the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Gamble testified at the PCR hearing that he had an opportunity to investigate the facts in this case, and that he had the results of Petitioner's psychiatric evaluation, the autopsy report, Petitioner's statements, and Petitioner's school records. (Dkt. No. 13-1 at 86 of 111.) When asked if he was preparing to go to trial, Gamble stated, "I was good enough to go to trial; gearing up all the team that I would need to show all of those mitigating factors, if there were any." (Id. at 87.) Because Petitioner has not rebutted the presumption of correctness, he is not entitled to relief on this claim.[3]

_____

[3]Petitioner contends in his Response in Opposition that he "instructed his counsel to go to the home where he lived and retrieve the tissue from the bathroom trash can which at that time would have coincided with Petitioner's testimony that he tried CPR on the victim in the bathroom. The tissue contained both DNA from the victim and petitioner." (Dkt. No. 16-1 at 4 of 14.) Petitioner did not make this specific allegation in his PCR application, nor did he testify as to this alleged error at his PCR hearing. Petitioner testified at the PCR hearing that if counsel had reviewed the State's file, counsel "would have found exculpatory evidence within the State files." (Dkt. No. 13-1 at 64 of 111.) Petitioner admitted at the PCR

12

The analysis portion of the PCR judge's order does not appear to specifically address the claim that counsel failed to provide all of the discovery to Petitioner. As a result, the claim may be procedurally barred. Regardless of whether the claim is procedurally barred, Petitioner is not entitled to relief. The PCR judge found that Petitioner's testimony was not credible and that Gamble's testimony was credible. Gamble testified that he sent Petitioner "everything that we had received from the state in his file." (Dkt. No. 13-1 at 91 of 111.) The following colloquy occurred:

> Q. I believe [Petitioner] testified that he was looking for some exculpatory evidence. To your knowledge was there any?
>
> A. No. There was nothing exculpatory in the entire file, and I looked through the state's file which includes photographs and all of that sort of things.

(Id.)

It is not clear what documents Petitioner claims Gamble should have provided to him, and it is even less clear how the alleged failure to provide those documents was constitutionally ineffective. See Breeland v. Pennsylvania, No. 11-7691, 2012 WL 1392627, at *8-9 (E.D. Pa. Mar. 27, 2012), adopted at 2012 WL 1392566 (E.D. Pa. Apr. 20, 2012) (rejecting habeas claim that a guilty plea was entered into unknowingly because counsel failed to provide the petitioner with discovery materials and agreeing "with the Superior Court of Pennsylvania that petitioner has failed to prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). Accordingly, Petitioner is not entitled to result on this claim.

_____

hearing that he did not know whether any exculpatory evidence existed. (Id. at 65.)
    Although Petitioner did not make the specific claim in his PCR proceeding, the PCR judge did conclude that Gamble "did fully investigate" Petitioner's case and that Petitioner failed to show prejudice for any alleged deficiency. (See Dkt. No. 13-1 at 107 of 111.) Petitioner has not shown this conclusion is contrary to, or an unreasonable application of, clearly established federal law. It is unclear how a tissue containing DNA from Petitioner and the victim would provide Petitioner with a defense to the murder charge.

b. Failure to Consult about Defenses and Failure to Mitigate

Petitioner also claims that his counsel was ineffective for failing to consult with him about possible defenses and for failing to attempt "to mitigate with the prosecutor before the prosecutor decided on any time." In rejecting the PCR application, the PCR judge found that the "case against [Petitioner] was overwhelming" and that Petitioner failed to show his counsel was deficient or that "'but for' any alleged deficiency the outcome of his case would have been different." (Dkt. No. 13-1 at 107 of 111.) The analysis portion of the PCR judge's order does not further address these two claims. As a result, the claims may be procedurally barred. Regardless of whether the claims are procedurally barred, Petitioner is not entitled to relief. The PCR judge found that Petitioner's testimony was not credible and that Gamble's testimony was credible. Gamble testified as follows at the PCR hearing:

> Q. . . . And I know you have already stated that it's kind of hard or difficult to communicate with Mr. Hill. But were you able to meet with him and to go over his case and the allegations against him and whatnot?
>
> A. Yes, I did. And every time I would go into the autopsy report or his statements or his polygraph exam, he would say: you are working against me. I said: I'm telling you what all they got. I'm not working against you. I'm telling you what they have.
> And then he would say: Well, you get me a defense.
> I said: You don't have a defense. The only defense possible is accident, and it's not there.

(Dkt. No. 13-1 at 87-88 of 111.) Gamble also explained why he did not believe Petitioner would be able to establish a defense at trial:

> You got a three-year-old child with subdural hematomas and retinal bleeding and organs ripped and torn. And he told me that he smoked a few joints before and was wrastling with the child on the couch.
> And as a matter of fact, he demonstrated for me that he was bouncing the child on the couch. And this is a three-year-old child, and the bounce was more than a bounce; if you tear out that many organs, then it's a really violent bounce. And if you have a subdural hematoma and have retinal bleeding, or hemmoraging, I just didn't see a win anywhere in this case.

(Id. at 87.) Gamble testified that he found "no mitigating circumstances." (Id. at 88.)

Although Petitioner claims his counsel was ineffective for failure to consult with him about defenses, and for failure to mitigate, Petitioner is not able to demonstrate prejudice. The PCR court concluded the evidence against Petitioner was "overwhelming," and plea counsel testified the defense of accident simply was not a viable one on the facts of the case. Petitioner has not shown that he did in fact have a viable defense or that there were mitigating factors that his counsel failed to present. At the plea hearing, the solicitor noted Petitioner's statement that "it was an accident," but she also noted that the forensic pathologist concluded the child was "squeezed, shaken, and struck repeatedly, and . . . probably stomped as well." (Dkt. No. 13-1 at 18-19 of 111.) The solicitor further noted the pathologist "said that the injuries were consistent with a fall from a multiple-story building and/or a high-speed car wreck" and that there was "no way this is an accident." (Id. at 19.) On the facts of the instant case, Petitioner is not entitled to relief on these ineffective assistance of counsel claims, as Petitioner is unable to establish the prejudice prong of Strickland.[4]

_____

[4]In his Response in Opposition, Petitioner stated that Gamble "abandon[ed] Petitioner's only defense of voluntary manslaughter by not submitting evidence that could have possibly mitigated the charge against the Petitioner." (Dkt. No. 16-1 at 7 of 14.) In a claim that appears related to that discussed in footnote 3 above, Petitioner states that counsel was ineffective for failing "to present evidence to the court that Petitioner indeed tried CPR on [the] victim." (Id. at 6.) Again, Petitioner did not make this specific claim in his PCR proceeding. The PCR judge did note, however, that Gamble–whose testimony the PCR judge credited–stated there was no exculpatory evidence. (Dkt. No. 13-1 at 106 of 111.) It is also clear from the record that while Petitioner contended the death was an accident, Gamble evaluated that defense and concluded it was not a viable one. Although it appears Petitioner believes he should have been convicted of–if anything–voluntary manslaughter instead of murder, Petitioner has not shown his counsel was ineffective. Under South Carolina law, "[v]oluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." State v. Byrd, 323 S.C. 319, 322, 474 S.E.2d 430,432 (1996). In the case *sub judice*, the victim was approximately three years old, and there is no evidence of heat of passion. The undersigned therefore concludes that Petitioner has not shown that he is entitled to relief under § 2254.

**B.      Involuntary Guilty Plea**

In his § 2254 petition, Hill contends his guilty plea was involuntary. Hill states that he "will . . . show that his plea was involuntary due to counsel [sic] erroneous advice to plea[d] guilty." (Dkt. No. 1-1 at 9 of 15.) Petitioner contends that because his attorney never investigated the case and was not prepared, "counsel had no theory of a defense" and even "openly admitted in court that he could not find the defendant a defense." (Id.) Petitioner also contends his guilty plea was involuntary due to counsel's "failure to suppress" statement(s) he made before he was read his Miranda rights, the polygraph test before he was read his Miranda rights, and the hair sample taken before he was read his Miranda rights or arrested. (Id. at 9-10.) Petitioner cites United States v. Cronic, 466 U.S. 648 (1984),[5] and states that "[c]ounsel deliberately overborne [sic] defendant's will to go to trial." (Id. at 10.) Petitioner states that he was "coerced into pleading guilty." (Id. at 11.)

"A guilty plea . . . is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). As the Supreme Court stated in Hill v. Lockhart, "[t]he longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). "In evaluating the constitutional validity of a guilty plea, 'courts look to the totality of the circumstances surrounding [it], granting the defendant's solemn declaration of guilt a presumption of truthfulness.'" Unites States v. Moussaoui, 591 F.3d 263, 278 (4th Cir. 2010) (quoting Walton v. Angelone, 321 F.3d 442, 462 (4th Cir. 2003)).

_____

[5]Petitioner never presented a Cronic claim to the PCR court, so that claim is now procedurally barred.

In rejecting Hill's PCR application, the PCR judge stated,

> This Court does not find the testimony of Applicant to be credible. This Court does find Mr. Gamble's testimony credible. Mr. Gamble did fully investigate Applicant's case and was prepared to go to trial. Applicant understood the charges against him, the case the state had assembled and the rights he was giving up by pleading guilty. This Court finds that Applicant chose freely and voluntarily to plead guilty in an effort to receive a more lenient sentence.
>
> This Court further finds that the case against Applicant was overwhelming and that Applicant has not shown that plea counsel was deficient. Certainly Applicant has not shown that "but for" any alleged deficiency the outcome of his case would have been different. Plea counsel kept Applicant well informed. Mr. Gamble's strategy with regard to requesting assistance from Mr. Campbell and Mr. Richey was well within the reasonable professional norms of a criminal defense attorney in this state.

(Dkt. No. 13-1 at 107 of 111-12.)

Respondent seeks summary judgment on Petitioner's claim that his guilty plea was involuntary. (See Dkt. No. 13 at 23-25.) Because Petitioner has not met the standard set forth in § 2254, the undersigned recommends granting summary judgment on this claim. The plea colloquy in this case reveals that Petitioner understood he was charged with murder, and that the maximum possible penalty he could receive was life without parole. (Dkt. No. 13-1 at 7-9 of 111.) Petitioner indicated he understood that in return for his guilty plea, the State agreed not to seek the death penalty. (Id. at 8.) Although Petitioner originally stated at the plea colloquy that he "should have seen" his attorneys more often, when the plea judge asked how much more time Petitioner needed with his attorneys, Petitioner stated, "I don't need to spend no more time." (Dkt. No. 13-1 at 10-11 of 111.) When Petitioner indicated his attorneys had not discussed the case with him, the plea judge took a recess. (Id. at 11-12.) After the recess, Petitioner stated that his attorneys had answered all of his questions, that he was satisfied with his attorneys, and that he had no complaints about his attorneys. (Id. at 12.) Mr. Gamble indicated that he had gone over the elements of murder with Petitioner. (Id. at 13.) Petitioner acknowledged that by pleading guilty, he was

giving up the right to remain silent, the right to a jury trial (where his attorneys could move to suppress evidence and call witnesses on his behalf), the right to require the State to prove him guilty beyond a reasonable doubt, and the right to cross-examine witnesses. (Id. at 14-15.) The following colloquy also occurred between Petitioner and the plea judge:

THE COURT: Understanding that about a jury trial, do you want a jury trial?

THE DEFENDANT: No, sir.

THE COURT: Has anybody promised you anything in order to get you to plead guilty, other than the recommendation by the State of life without parole?

THE DEFENDANT: No, sir.

THE COURT: And dropping the notice for the death penalty. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody coerced, intimidated you, or threatened you to get you to plead guilty?

THE DEFENDANT: No, sir. No, sir.

THE COURT: Have you had enough time to make your decision to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Are you pleading guilty of your own free will and accord?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: How do you wish to plead?

THE DEFENDANT: Guilty.

THE COURT: Are you guilty?

THE DEFENDANT: Yeah.

18

(Dkt. No. 13-1 at 15-16 of 111.) On the facts of the instant case, the claim that Petitioner's guilty plea was involuntary should be rejected. See United States v. Solomon, 106 Fed. App'x 170, 171 (4th Cir.2004); United States v. Robinson, 82 Fed. App'x 322, 323 (4th Cir.2003) ("Robinson's plea colloquy reveals that his plea was knowingly and voluntarily entered into."); United States v. DeFusco, 949 F.2d 114, 119-20 (4th Cir.1991); see also Ridgeway v. Stevenson, No. 3:10-490-RBH, 2011 WL 666124, at *6-7 (D.S.C. Feb. 11, 2011) (rejecting the petitioner's claim that there was a violation of Boykin v. Alabama, 395 U.S. 238 (1969), where the petitioner contended that "there [was] no evidence that anyone, neither trial counsel nor the court, even explained to petitioner the actual elements of the charged offenses prior to accepting petitioner's guilty plea" because, inter alia, while "the plea is invalid" where "a defendant pleads guilty to a crime without having been informed of the crime's elements," "the United States Supreme Court has never held that the judge himself must explain the elements of each charge to the defendant on the record"). Petitioner has not shown that the PCR judge's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. The undersigned therefore recommends granting summary judgment to Respondent on this claim.

## C. Lack of Subject Matter Jurisdiction and Invalid Indictment

Petitioner seeks relief in the instant habeas petition due to alleged lack of subject matter jurisdiction and an invalid indictment. (See Dkt. No. 1.) Respondent moves for summary judgment on these two claims, contending that they are not cognizable on federal habeas review. (See Dkt. No. 13 at 25-27.) The undersigned agrees with Respondent. "Federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (internal quotation marks and citations omitted). Indeed, federal habeas relief is only available when the alleged error was based on a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see also Wright

19

v. Angelone, 151 F.3d 151, 158 (4th Cir. 1998) (holding jurisdiction is a matter of state law); Epps v. Bazzle, No. 9:07-cv-3113-RBH, 2008 WL 2563151, at *2 (D.S.C. June 23, 2008) ("Petitioner's claim that the trial court lacked subject matter jurisdiction fails because circuit courts have subject matter jurisdiction to try criminal cases regardless of whether there is a valid indictment in any particular case."); Von Longmore v. South Carolina, No. C.A. 9:05-CV-2112-MBS, 2006 WL 2827416, at * (D.S.C. Sept. 27, 2006) ("Petitioner is not entitled to federal habeas relief because the subject matter jurisdiction of a state trial court is a state law issue."). Because these two claims are not cognizable on federal habeas review, the undersigned recommends granting Respondent's Motion for Summary Judgment on these claims.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 12) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[6]

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

July 13, 2012
Charleston, South Carolina

**The Petitioner's attention is directed to the important notice on the next page.**

---

[6]A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-85 (4th Cir. 2001). In this case, the undersigned recommends concluding that the standard for the issuance of a certificate of appealability has not been met.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).